## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE

JOSEPH R. UNDERWOOD                                                    PLAINTIFF

v.                                          CIVIL ACTION NO. 3:12CV-P684-S

CIRCUIT JUDGE-JUSTICE CENTER *et al*.                                   DEFENDANTS

### MEMORANDUM OPINION

Plaintiff Joseph R. Underwood, a prisoner proceeding *in forma pauperis*, filed a *pro se*
complaint pursuant to 42 U.S.C. § 1983 (DN 1).  He also filed a letter in which he reiterated the
claims in his complaint and requested a case status (DN 6).  This matter is before the Court for
initial review pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th
Cir. 1997).  For the reasons set forth below, the action will be dismissed.

### I.  SUMMARY OF CLAIMS

Plaintiff names five Defendants in this action; he indicates that all Defendants are sued in
both their individual and official capacities.  In the caption of the complaint, Plaintiff lists the
first Defendant as "Circuit Judge-Justice Center."  Later on in the complaint, he identifies this as
the Justice Center at the Hardin County Court.  The second Defendant is "Commonwealth
Attorney-David B Abner."  Plaintiff identifies the third Defendant as "APA Office-Fracis L
Holbert."  "Hardin County its-self" is the fourth named Defendant.  The last Defendant named
by Plaintiff in this action is the Commonwealth of Kentucky.  As relief, Plaintiff seeks
compensatory and punitive damages and release from incarceration.

According to Plaintiff, he was charged with a "Class B" state crime that carries a penalty
of between ten and twenty years incarceration.  Plaintiff states that he "was not under the PFO
[persistent felony offender] requirements to charge him with a PFO."   According to Plaintiff,
"the Court" and "they" knew that he did not meet the requirements to be charged as a PFO.

Despite this, "the Court" and "they" lied to him and threatened him with a PFO and additional time of imprisonment if he did not take a plea which included a 25-year term of imprisonment. Apparently, Plaintiff entered into a plea which stipulated a term of imprisonment of 25 years. According to Plaintiff, "while in prison it has physically and mutually done stuff to his mind lost of sleep of his conditions in prison." Plaintiff contends that his right to due process was violated by Defendants, as well as the Eighth and Fourteenth Amendments.

Attached to the complaint is a document captioned "'Motion Of' 60.02 And 11.42 Actions on 'Hardin Co ApA Office.' 'Judge for fabricating a way to violate my rights.'" In the motion, Plaintiff states:

> Fabricating another way to add time to a class B Felon Mr. Underwood did not know the laws of the Court at this time, and it is wrong to sentence a person for more time than the charge it-self carries, seperation of the powers issue, increasing the maxium sentence in a judicial matter, through and under executive body of action, to guard against transgretion of the high powers which we have delegated . . . is violating another seperation of powers issue. General Powers powers subordinate to the Bill of Rights. "Frivulous actions."

Plaintiff attached a second document to the complaint in which he states that he is bringing this action only under 42 U.S.C. § 1983, and that his action does not "fall under 2241, 2254, [or] 2255." Further, he states:

> the Court of Hardin Co. knew I was being miss lead in my sentence as of 25 years for a Class B crime this also would fall under a double jepordey clause saying they would run both charges together to a Class B Class B only careys 20 years only in these "frivlous" actions of this court being unjustice to somebody that did not know the court I only want paid for these mistakes and released to go home to my family 8 million for my trouble and stay in here or 4 million and go home, this court knew they was not helping me none butting both charge's together!

## II. STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any

portion of it, if it determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d at 604.  A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  *Id.* at 327.  In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers*, *USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).  "But the district court need not accept a 'bare assertion of legal conclusions.'"  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).  The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff.  *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

3

### III.  LEGAL ANALYSIS

**A.  Plaintiff's Action is Barred By *Heck v. Humphrey***

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court established the so-called "favorable termination rule."  The *Heck* Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id*. at 486-87.  If a ruling on a § 1983 claim would necessarily imply the invalidity of any outstanding criminal judgment against Plaintiff, the § 1983 claim must be dismissed, not for lack of exhaustion of state remedies, but because it is simply not cognizable until the criminal judgment has been terminated in Plaintiff's favor. *Id*. at 487.  The favorable termination requirement "'avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant [sic] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.'" *Id*. at 484 (quoting 8 S. Speiser, C. Krause, & A. Gans, American Law of Torts § 28:5, p. 24 (1991)).  Under *Heck* and its progeny, "a state prisoner's § 1983 action is barred (absent prior invalidation)--no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)--*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).

4

In the present action, Plaintiff's claims, if valid, would imply the invalidity of his criminal conviction and sentence. There is nothing in the complaint indicating that the criminal charges against Plaintiff have been invalidated. For this reason, Plaintiff's claims are not cognizable under *Heck v. Humphrey*. Therefore, this entire action must be dismissed.

There are additional reasons that various of Plaintiff's claims must be dismissed. These additional reasons follow.

### B. Official-Capacity Claims

#### 1. Eleventh Amendment Immunity

Under the Eleventh Amendment to the U.S. Constitution,[1] a state and its agencies may not be sued in federal court, regardless of the relief sought, unless the state has waived its immunity or Congress has overridden it. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144-47 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121-124 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). The Commonwealth of Kentucky has not waived its immunity, *see Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004), and in enacting § 1983, Congress did not intend to override the traditional sovereign immunity of the states. *Whittington v. Milby*, 928 F.2d 188, 193-94 (6th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)); *Ferritto v. Ohio Dep't of Highway Safety*, No. 90-3475, 1991 WL 37824, at * 2 (6th Cir. Mar. 19, 1991) ("The Eleventh Amendment prohibits actions against states and state agencies under section 1983 and section 1985."). The Eleventh

---

[1] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. "While the Amendment by its terms does not bar suits against a State by its own citizens, [the Supreme Court] has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

Amendment similarly bars the damages claims against the "Commonwealth Attorney," David B. Abner, the APA, Francis Holbert, and the Circuit Judge, all state officials sued in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity.").

### 2. Municipal Liability

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues:  (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).  The Court will address the issues in reverse order.

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 694 (1978).

> There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom. The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations.

*Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).  In this action Plaintiff sues Hardin County.  Plaintiff fails to allege any municipal policy or custom that he contends resulted in violations of his constitutional rights.  Therefore, as to Defendant Hardin County, Plaintiff fails to state a claim upon which relief may be granted.

## C.  Individual-Capacity Claims

### 1.  Judicial Immunity

The Supreme Court squarely addressed absolute judicial immunity in the seminal case, *Stump v. Sparkman*, 435 U.S. 349 (1978).  The Court opined that judicial immunity is embedded in the long established principle that "a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself." *Id.* at 355 (quoting *Bradley v. Fisher*, 13 Wall 335, 347 (1872)).  The law is clear that a judge acting within the scope of his official duties and within his jurisdictional authority is absolutely immune from damages liability. *Stump v. Sparkman*, 435 U.S. 349; *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991); *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000); *Ireland v. Tunis*, 113 F.3d 1435, 1440 (6th Cir. 1997); *Watts v. Burkhart*, 978 F.2d 269 (6th Cir. 1992).  This immunity confers complete protection from a civil suit. *Tulloch v. Coughlin*, 50 F.3d 114, 116 (2d Cir. 1995).

 A judge is subject to liability only for nonjudicial actions or if performed acts which were judicial in nature were taken in the "clear absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. at 11-12; *Ireland v. Tunis*, 113 F.3d at 1440.  Whether or not an act is judicial depends on the nature and function of the act. *Ireland v. Tunis*, 133 F.3d at 1440.  Two factors are used to perform this functional analysis. *Id.* at 1441.  The Court must first determine whether the act is "a function normally performed by a judge." *Id.* (quoting *Stump v. Sparkman*, 435 U.S. at 362).  The Court must also look at "whether the parties dealt with the judge in his or her judicial capacity." *Ireland v. Tunis*, 133 F.3d at 1441.  A judge acts in clear absence of all jurisdiction only if the matter acted upon is clearly outside the subject matter of his court. *Ireland v. Tunis*,

133 F.3d at 1441; *King v. Love*, 766 F.2d 962, 965-96 (6th Cir. 1985); *Sevier v. Turner*, 742 F.2d 262, 271 (6th Cir. 1984).  Acting in error, maliciously, or in excess of his authority is not enough.  *Stump v. Sparkman*, 435 U.S. at 356.

 Both factors used for the functional analysis indicate the alleged wrongful acts performed by Defendant "Circuit Judge" were judicial.  Further, there is no indication that the judicial Defendant lacked jurisdiction to make the decisions he or she made.  Consequently, the claims against Defendant "Circuit Judge" are barred by judicial immunity.

## 2.  Prosecutorial Immunity

The Supreme Court has addressed the issue of prosecutorial immunity in several decisions.  For example, in *Imbler v. Pachtman*, 424 U.S. 409 (1976), the Court noted that the common law afforded absolute immunity to prosecutors for several reasons.  Immunity encourages vigorous decision making by reducing, if not eliminating, liability's inhibitory effect. *Id.* at 424-25.  It protects prosecutors against having "to answer in court each time [a defendant] charge[s] him with wrongdoing [which diverts] his energy and attention . . . from the pressing duty of enforcing the criminal law."  *Id*. at 425.  Immunity also ensures that judges are not influenced "by even the subconscious knowledge that a post-trial decision in favor of the accused might result in the prosecutor's being called upon to respond in damages for his error or mistaken judgment."  *Id.* at 427.  Alternative mechanisms, such as a trial judge's remedial powers, appellate review and post-conviction collateral remedies, exist to remedy injury caused by prosecutorial misconduct.  *Id.*  The Court concluded that "the same considerations of public policy that underlie the common-law rule likewise countenance absolute immunity under § 1983."  *Id*. at 424.

8

In *Imbler* the Court utilized a functional approach in determining whether prosecutorial immunity applied.  The Court held that a prosecutor enjoys absolute immunity from § 1983 liability when he acts "as an advocate" by engaging in activities "intimately associated with the judicial phase of the criminal process." *Id.* at 430; *see also Moore v. Valder*, 65 F.3d 189, 192-94 (D.C. Cir. 1995).  Describing the conduct protected by immunity, the Court opined that advocatory conduct includes "initiating a prosecution" and "presenting the State's case." *Imbler v. Pachtman*, 424 U.S. at 431.  Advocatory conduct is clearly protected by absolute immunity. *Lomaz v. Hennosy*, 151 F.3d 493 (6th Cir. 1998); *Ireland v. Tunis*, 113 F.3d 1435.

Conduct that is purely administrative or taken in an investigatory capacity is not covered by prosecutorial immunity.  The *Imbler* Court recognized that distinguishing between action taken as an advocate and action taken as an administrator or even investigator might present difficult questions.  *Id*. at 431 n.33.  The courts have thereafter wrestled with the distinction between advocatory conduct entitled to absolute immunity and non-advocatory conduct.  *Burns v. Reed*, 500 U.S. 478 (1991); *Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir. 2000); *Grant v. Hollenbach*, 870 F.2d 1135 (6th Cir. 1989); *Joseph v. Patterson*, 795 F.2d 549, 554 (6th Cir. 1986).

The Sixth Circuit has decided that unless engaging in actions clearly beyond his authority, a prosecutor is absolutely immune for actions taken during negotiation of a plea agreement.  *Rouse v. Stacy*, 478 F. App'x 945 (6th Cir. 2012).  "It is beyond question that a prosecutor's plea bargaining activities, regardless of motive, warrant absolute immunity." *Id.* at 951; *see also Cady v. Arenac Cnty.*, 574 F.3d 334, 341 (6th Cir. 2009) (stating that a plea bargain is "so intimately associated with the prosecutor's role as an advocate of the State in the judicial process as to warrant absolute immunity").

9

In the present case, all of Plaintiff's claims against the "Commonwealth Attorney-David B Abner" are entitled to absolute prosecutorial immunity. This is because there are no allegations that would indicate that this Defendant clearly acted beyond his authority during the plea negotiation. The alleged wrongful conduct was advocatory conduct that was intimately associated with the judicial process. None of the wrongful actions alleged by Plaintiff as to Defendant Abner were investigatory or administrative in nature.

For this reason, Defendant "Commonwealth Attorney-David B Abner" is entitled to prosecutorial immunity.

## IV.  CONCLUSION

For the reasons set forth more fully above, this entire action must be dismissed since it is barred by *Heck v. Humphrey*. Further, Eleventh Amendment Immunity bars the official-capacity claims against the Commonwealth of Kentucky and its officials. Plaintiff has failed to state a claim of municipal liability as to Hardin County. The individual-capacity claim against Defendant "Circuit Judge" is barred by judicial immunity. Finally, the individual-capacity claim against Defendant "Commonwealth Attorney-David B Abner" is barred by prosecutorial immunity.

The Court will enter a separate Order of dismissal.

Date: March 7, 2013

**Charles R. Simpson III, Senior Judge**
**United States District Court**

cc:     Plaintiff, *pro se*
        Defendants
4411.003

10